32681. BARNWELL *v.* HANSON.

DECIDED JANUARY 19, 1950.

740

*A. W. Long, Durwood Pye,* for plaintiff.

*William G. Grant, Grant, Wiggins, Grizzard & Smith,* for defendant.

GARDNER, J. Under the pleadings and the evidence, the con-

trolling question involved is whether the suit was brought within the statute of limitations. The note sued on was under seal. Actions upon bonds or other instruments under seal shall be brought within 20 years after the right of action shall have accrued. Code § 3-703. A promissory note under seal is within the provisions of this statute.

Upon default by the maker in the payment of the semi-annual interest on this note on February 28, 1927, did the principal of the note become instantly due and payable, under the clause in the note that immediately upon such default the entire principal "shall become instantly due and payable"? It is to be noted that the clause in this note, unlike the acceleration clause in many notes, does not provide that upon default in the payment of the interest the entire principal shall, at the option of the holder become immediately due and payable. In such a case, the holder of the instrument would have to exercise the option in order for the note to become due and payable. See Lee v. O'Quinn, 184 Ga. 44 (190 S. E. 564); 8 C. J. 417; 10 C. J. S. 749. The note here contains no such option. "A contract providing that on default as to payment of one or more of a series of instalment notes the remaining notes of a series shall become due and payable, operates to mature the entire debt upon the default, and not merely to give the creditor an option to treat the whole debt as due or not." Gilford v. Green, 33 Ga. App. 1, 4 (125 S. E. 80). In Tiedeman Mortgage &c. Co. v. Carlson, 41 Ga. App. 406 (152 S. E. 909), it is ruled that "Where a contract for the payment of money in instalments at different dates provides that, upon default in the payment of any one of the instalments when due, the entire indebtedness becomes due, and the contract contains no provision accelerating the maturity of the instalments at the creditors option, the default operates automatically and ipso facto, without any option on the part of the creditor, to render the entire indebtedness due." See McRae v. Federal Land Bank, 36 Ga. App. 51 (135 S. E. 112).

So it appears to be the settled rule in this State that where the acceleration clause in a note or other instrument for the payment of money is absolute in its terms and not optional with the holder, then upon default in the payment of the in-

terest instalment the entire debt "automatically and ipso facto" becomes due and payable—that is, the debt matures, without regard to any affirmative action on the part of the holder to declare same due, or to enforce such provision or insist thereon, which is necessary when the acceleration clause is optional and not absolute.

The next question presents itself as follows:   Did the statute of limitations commence running from the date the maker failed to pay the semiannual interest on February 28, 1927?   It is insisted by the defendant maker that this is the case and that the default in the payment of the semiannual interest having taken place more than 20 years prior to the institution of this suit by the holder of said note, same being filed August 13, 1948, the right of action of the plaintiff on the note was barred.   "In considering the effect upon the running of the statute of limitations of an acceleration clause in a promissory note, a distinction must be drawn between an acceleration provision which is absolute in its terms and one which merely gives the payee or holder the option of accelerating the maturity of a note upon the happening of some contingency, usually default in payment of instalments or interest.  .  .   According to the weight of authority, where the acceleration provision is absolute in its terms, —that is, that the note becomes due on default, without any optional features,—the statute of limitations begins to run upon such default."   34 Am. Jur. 120, § 151; 34 A.L.R. 901 et seq.; 161 A.L.R. 1212 et seq.

The plaintiff holder urges, however, that the defendant maker can not interpose, as to her, the plea of the statute of limitations because she was, under the facts, presumed to be a holder in due course of the note.   The plaintiff relies on the principle that she being a holder in due course, without notice of any defects in the note, could not be defeated in her attempt to collect this note because she had a right to rely upon the apparent fact that the note would not mature and become payable until two years after its date.   The plaintiff claims that this note is a negotiable instrument, and, nothing to the contrary appearing, she is to be deemed a holder in due course, without notice of any defects, holding the note free from any defect or other thing tending to defeat its collection.   There-

fore, the plaintiff states, since it does not appear that she acquired this note after maturity, it is to be presumed that she acquired the same before maturity and now holds the note free of any defect in the note that would prevent its being collected. The plaintiff cites *Cook* v. *Parks*, 46 *Ga. App.* 749 (169 S. E. 208) to the effect that the note sued on is a negotiable instrument, and the case of *Whittle* v. *Citizens Bank of Ashburn*, 37 *Ga. App.* 693 (141 S. E. 668), and others to the effect that the plaintiff is presumed to hold this note in due course and free of any defect that would tend to defeat its collectibility. Also, the plaintiff cites *Wade* v. *Elliott*, 11 *Ga. App.* 646, 648 (75 S. E. 989). We have no criticism of these cases or with the principles followed and laid down by this court therein. None of these cases, however, dealt with the effect of an absolute acceleration provision upon the negotiability of a promissory note upon default in the payment of interest and with the effect of such default on the running of the statute of limitations.

The note sued on is a negotiable instrument. The inclusion therein of a provision whereby the entire principal became due on failure of the maker to pay the semiannual interest did not change the note to a non-negotiable one. According to the weight of authority, a promissory note otherwise negotiable is not rendered non-negotiable by a provision therein that, upon default by the maker in the performance of certain agreements, the note is to become due and payable. See Annotations, 34 A.L.R. 873.

The most common provision for accelerating the maturity date of notes is that upon default in the payment of interest the entire debt becomes due. 34 A.L.R. 875. It is held that a note is not rendered non-negotiable by a provision that, if there is a default in the payment of interest, the whole of the debt becomes due. See DeHass *v.* Dilbert, 70 Fed. 227; Roberts *v.* Snow, 27 Neb. 425 (43 N. W. 241); Kendall *v.* Selby, 66 Neb. 60 (92 S. W. 178, 103 Am. St. R. 697). The foregoing principle holds good under the Uniform Negotiable Instruments Law, such as the Georgia statute. In Commercial Savings Bank *v.* Schaffer, 190 Iowa, 1088 (181 N. W. 492), it is held that the rule is the same under the Negotiable Instruments Law and therefore that a note otherwise negotiable is

not rendered non-negotiable by a provision therein that it shall become due and collectible upon failure to pay interest. It follows that the holder in due course, acquiring such a note, would acquire same subject to this provision in the note. Such a provision in the note in sufficient to put the holder in due course upon inquiry as to whether or not there has been a default in the payment of this interest by the maker. The exercise of any diligence in this regard by the person acquiring the note, would disclose whether the maturity of the note has been accelerated by a default, causing the statute of limitations to commence. See, as to such notes being negotiable under the Negotiable Instruments Law, Bright v. Offield, 81 Wash. 442 (143 Pac. 159), and Taylor v. American National Bank, 63 Fla. 631 (57 So. 678). The same principle is true where there is a provision in the note accelerating maturity upon failure to pay the taxes. Lundean v. Hamilton (Iowa) 159 N. W. 163; Westlake v. Cooper, 69 Okla. 212 (171 Pac. 859, L.R.A. 1918D, 522). There is no provision in the Negotiable Instruments Law as it is enacted and prevails in this State, which directly governs the negotiability of a note containing a clause providing that the note should become immediately due and payable upon default in the payment of interest. The Negotiable Instruments Law in Georgia provides that as to the form and interpretation of negotiable instruments: "The sum payable is a sum certain within the meaning of this Title, although it is to be paid. . . (3) By stated instalments, with a provision that upon default . . of any instalment or of interest the whole shall become due." Code § 14-202 (3).

The plaintiff, therefore, regardless of whether she purchased this note, before maturity, as shown by the face of the note, but at a time when the note had actually become due and payable by reason of the maker's default in the payment of interest or taxes, took the instrument with this provision embodied therein. The inclusion in the negotiable instrument of a provision of this type accelerating the maturity of the instrument was sufficient to put any subsequent holder on inquiry as to whether the semiannual interest had been paid by the maker in accordance with the terms of the contract. Furthermore, a plea that a note is barred by the statute of limitations

is not a defensive plea on the merits, but is a plea in bar. The fact that this note contained an absolute accelerating provision automatically maturing the note upon default in the payment of semiannual interest did not constitute an infirmity in the note. This did not constitute a default in the title of the person negotiating the note.

But it is insisted that the subsequent payment on September 1, 1927, by the maker of the semiannual interest instalment which was due February 28, 1927, and its acceptance by the holder, amounted to a waiver of the right to insist upon the acceleration provisions of the note and served to toll the statute of limitations. With this provision we do not agree. "Where the instrument does not provide that in case of default the amount remaining due thereon shall at once become due and payable, but provides merely that in case of such default the entire amount may, at the option of the holder, become at once due and payable, if the arrears are paid and accepted prior to such election on the part of the holder his right to exercise the option would thereupon become extinguished; but if such an election is declared prior to the tender of such arrearage . . the rights of the parties are the same as if the entire note had by its terms become due immediately upon default, without such an election. In either of such cases, the entire debt being then due, the mere acceptance of part payment thereon would not amount to a waiver of the prior default or undo the maturity of the remainder of the indebtedness and set it forward to the dates originally fixed therefor under the terms of the original contract." McRae v. Federal Land Bank, 36 Ga. App. 51 (2) (supra). To the same effect see Gilford v. Green, 33 Ga. App. 1, 4 (125 S. E. 80), where the court held that upon default by the maker and the acceleration clause is automatic, "the debtor owes the creditor the duty of paying the entire amount at once, and the partial performance of this obligation by the immediate payment of a part of the aggregate debt thus due would not in any wise affect the existing maturity of the whole, although such payment amounted to more than would have been due but for the default." In Spesard v. Spesard, 75 Kan. 87 (88 Pac. 576), annotated in 34 A.L.R. 903, it is held that payment of taxes after due date will not toll the

running of the statute where the acceleration provisions are absolute. Likewise, in Miles *v.* Hamilton, 106 Kan. 84 (189 Pac. 926, 19 A.L.R. 276), it was held that the payment of interest which had been in default would not toll the running of the statute.

Applying the above, it is our opinion that neither the fact that the defendant maker paid the semiannual interest after it was due and this payment was accepted by the plaintiff holder nor the fact that the maker subsequently paid the taxes due on October 1, 1927, on May 5, 1928, and such payment was accepted by and accrued to the benefit of the holder, operated to prevent the statute of limitations from commencing on August 28, 1927, and from continuing to run.

*Smith* v. *Gholstin,* 45 *Ga. App.* 287 (164 S. E. 217), relied on by the plaintiff, is not authority against the ruling made in the case at hand. Furthermore,. in that case the acceleration clause was plainly optional. The court was dealing with a departure from the terms of the original contract by accepting the payment of several notes after they were due. The same is true of the case of *Carmichael* v. *Guenette,* 61 *Ga. App.* 460 (6 S. E. 2d, 365), cited by the plaintiff. In that case it appeared that the seller had extended time for payment under a conditional-sale contract for two days and relying on this extension, the buyer absented himself from the county and on the next day after such extension the seller undertook to declare the contract forfeited and to retake the property. The court properly held that this could not be done. In *Mechanics Loan &c. Co.* v. *Fowler,* 57 *Ga. App.* 277 (195 S. E. 222), it was held that acceptance of instalment payments after the dates on which they were due is a waiver of the right to treat the agreement as void in the absence of notice that the payments are not being accepted as payment under the terms of the agreement. There was no question of an absolute acceleration clause and default by the maker of the note as here.

There was no legal agreement by the holder of the note, either express or implied, which would prevent the entire indebtedness from maturing upon such default by the maker, or prevent the statute from running from the date of such accelerated maturity, in the instant case; nor did acceptance

by the holder of the interest payments and of the taxes after due and after default and automatic acceleration of the maturity of the note operate as a waiver or prevent the statute from running. Furthermore, our Code provides: "A new promise, in order to renew a right of action already barred, or to constitute a point from which the limitation shall commence running on a right of action not yet barred, shall be in . . the party's own handwriting, or subscribed by him or someone authorized by him." Code § 3-901. There was no such promise, express or implied, involved here. The plaintiff holder asserts that under the provisions of the Code, § 3-805, which reads, "If the defendant . . shall remove from this State, the time of his absence from the State, and until he returns to reside, shall not be counted or estimated in his favor" this note is not yet barred in that it was executed in North Carolina where the maker lived at that time and that he moved to Georgia in June, 1942. It plainly states that if the defendant shall "remove" from Georgia, and the defendant here was a resident of North Carolina when the note was signed, and the debt accrued, and remained there some 16 years, then moved, not "removed" to this State in 1942. The case of *Moore* v. *Carroll*, 54 *Ga.* 126 is controlling here. There is nothing in *Howell* v. *Burnett*, 11 *Ga.* 303 to the contrary. There the note was executed.

Applying the above rulings, the trial court properly rendered judgment for the defendant, where it appeared from the evidence that the plaintiff's right of action on the note was barred on August 13, 1948, the date when the suit on the note was filed. It follows that the court did not err in overruling the plaintiff's motion for a new trial.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*