## 62751. MARTIN et al. v. SOUTHERN ATLANTIC INVESTMENT CORPORATION.

DEEN, Presiding Judge.
Albert and Dorothy Martin sold a certain block of real property in Savannah to Tompkins and received as partial payment a note

which was secured by a deed to secure debt. Tompkins immediately sold the property to appellee subject to the debt. Over a period of several months appellee had difficulty in making payments on the property and finally defaulted on the payment due on October 1, 1980. On October 8, 1980, counsel for appellants wrote a letter to appellee notifying it that foreclosure proceedings had been instituted as provided in the deed to secure debt and that it was accelerating the amount of the entire indebtedness of $166,409.77 plus $1816.09 in interest. On October 10, 1980, appellee's counsel tendered the amount demanded, but the tender was refused as insufficient. (Although there was no mention of the prepayment penalty in the letter, appellant was also demanding this sum). On October 13, 1980, a second letter was sent to appellee demanding $12,104.00 as a prepayment penalty plus $166,942.03 as a principal balance and $45.52 per day in additional interest from October 10, 1980. Appellee then tendered all sums alleged to be due into the registry of the court and filed an action for cancellation of the deed to secure debt. After a hearing, the trial court ordered that the deed to secure debt be cancelled upon payment to the appellants of $167,034.25, an amount agreed upon by the parties as the outstanding balance plus interest. Appellee was also ordered to tender $12,104.00 to the clerk as the estimated amount of the prepayment penalty. The agreed upon principal amount and interest were paid later that same day and the deed to secure debt was cancelled. Appellants then answered the complaint and filed a counterclaim for the prepayment penalty, litigation expenses and attorney's fees. Both sides moved for summary judgment and the Martins bring this appeal from an order denying their motion and granting the appellee's. *Held:*

The Martins' depositions show that they sold the property as a fifteen-year installment sale in order to take advantage of certain income tax benefits as provided by the Internal Revenue Code and that they insisted that a prepayment penalty clause be inserted in the deed to secure debt to cover any taxes they might incur if the debt was prepaid. The clause provides: "Grantor agrees to pay any and all tax liabilities incurred by the Grantee, *should the grantor desire to prepay the above incumbrance.* Said tax liabilities are those that would be incurred due to the prepayment and/or above sale."

The trial court held that the Martins voluntarily elected to accelerate the maturity of the debt after the appellee's default and there was no "prepayment" as that term is ordinarily used "because the entire encumbrance was due at the time the payment was made. Similarly, the [appellee's] payment is not deemed to be a voluntary action because he could not, at that time, choose to continue paying the debt in monthly installments. [Cits.]."

Both the note and the deed to secure debt provide for acceleration of the note at the option of the holder. Appellants caused a demand letter to be issued notifying appellees that they were exercising their option to accelerate and demanded payment of the outstanding principal and interest. Case law has established that where an acceleration clause in a note or other instrument is absolute in its terms and not optional with the holder, then upon default the entire debt automatically becomes due and payable without the necessity for any action on the part of the holder. However, when an acceleration clause is optional the holder must take affirmative action to exercise the clause. *Barnwell v. Hanson,* 80 Ga. App. 738 (57 SE2d 348) (1950). Thus, the debt was accelerated at the option of the appellants. The question then remains as to whether the exercise of this option triggers the prepayment penalty clause. We think not.

It is well established that the construction of ambiguous contracts is the duty of the trial court (*Holcomb v. Word,* 239 Ga. 847 (238 SE2d 915) (1977)), and that ambiguities in written contracts are construed most strongly against the writer of the contract. Code Ann. § 20-704 (5). It is only after applying the rules of construction and an ambiguity remains is extrinsic evidence admissible to explain the ambiguity. *Davis v. United American Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488) (1959). "Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business, will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties." Code Ann. § 20-704 (2).

Here, the trial court interpreted the language in the prepayment clause in terms of their usual and common signification as found in *Webster's New World Dictionary, College Edition,* 1968. See *Henderson v. Henderson,* 152 Ga. App. 846 (264 SE2d 299) (1979). The court found that the dispute arose over language contained in the deed to secure debt which gives the grantor " '. . . the right [privilege] to *accelerate* [hasten; cause to happen sooner] the *maturity* [the time at which a note becomes due] of the secured . . .' " (Emphasis supplied.) The prepayment clause was also interpreted as follows: " '. . . should the grantor desire [wish; request], to prepay [pay or pay for in advance] the above encumbrance.' "

We find no error in the trial court's construction of the contract and affirm the grant of summary judgment in favor of the appellee.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED JANUARY 8, 1982.

*Alan S. Lowe,* for appellants.
*Michael D. Marburger, Edward M. Hughes,* for appellee.